774 A.2d 745 (2001)
C.W., Appellant,
v.
K.A.W., Appellee.
Superior Court of Pennsylvania.
Argued January 30, 2001.
Filed March 21, 2001.
*746 John C. Howett, Harrisburg, for appellant.
Lawrence D. MacDonald, Wilkes-Barre, for appellee.
Before POPOVICH, JOYCE and BROSKY, JJ.
POPOVICH, J.
¶ 1 This is an appeal from the order entered on June 8, 2000, in the Court of Common Pleas of Luzerne County, in which the court awarded the parties shared legal custody of their minor child with primary physical custody of the child vested in K.A.W. For the following reasons, we vacate the order and remand for further proceedings consistent with this opinion.
¶ 2 K.A.W. ("Mother") had been a licensed cosmetologist since 1982. On July 21, 1989, she married C.W. ("Father"). Mother testified that although she wanted to have a child, her husband was against the idea at first because he did not want to change his work lifestyle, that is, his involvement *747 with several businesses in or related to the cosmetology field. She stated that, according to her husband, if she had a child, she would be solely responsible for raising him. On September 1, 1997, Mother gave birth to the parties' child, T.W. After a period of time, Father began to take an increasing interest in T.W. to the exclusion of Mother. Over time, his interest in T.W. developed into an almost smothering concern for the child. Father began to micromanage the life of T.W. Mother testified that by August of 1998, Father had cut his normal work schedule of over one hundred hours a week to nearly zero in order to raise T.W. According to Mother, by failing to allow the child independence, he limited T.W.'s developmental skills and stifled his normal ambulatory development. However, Father testified that Mother had abandoned T.W. by being more interested in her work than in rearing their son. For this reason, he had to spend more time raising T.W.
¶ 3 In the early morning hours of November 25, 1998, an incident occurred that resulted in a final separation of the parties. By Mother's account, the parties had an altercation in which Father pushed her. Afterward, while Mother was sleeping, he vacated the marital home with T.W. By Father's account, Mother was ranting and raving, so he left the home with T.W.
¶ 4 On November 25, 1998, Mother filed an action in divorce and sought, among other claims, custody of T.W. On November 30, 1998, Father filed a separate claim for custody of T.W.
¶ 5 On December 2, 1998, the trial court entered an interim order that awarded shared legal and physical custody of T.W. between Mother and Father.[1] The interim order also referred the matter to Valley Counseling Associates, P.C., for a comprehensive custody evaluation. The evaluation included interviews and psychological assessments of both parties and the child, assessments of both parties parenting ability and their homes and clinical observation of each party with T.W. On May 21, 1999, the trial court appointed a guardian ad litem to represent T.W. during the custody proceedings. The custody hearing commenced on July 19, 1999. The court conducted twelve days of hearings over the next seven months regarding the custody of T.W. After fully considering the evidence, the experts' reports, the testimony of the parties and the recommendation of the appointed guardian ad litem, the trial court entered an order on June 8, 2000. The court decided that the best interest and welfare of T.W. would be served by an award of shared legal custody between Mother and Father and an award of primary physical custody to Mother and partial physical custody to Father. Father appealed the June 8th custody order.
¶ 6 Herein, Father presents the following issues for our review.
1. Did the trial court abuse its discretion: (1) by appointing a guardian ad litem for the minor child when father, mother and the court were all seeking to safeguard the child's best interests and where the child, due to his age, could not provide the guardian with any input; and (2) by delegating to said guardian ad litem the court's judicial power to act as trier of fact and interpreter of law?
2. Did the trial court abuse its discretion by relying upon the custody evaluation prepared in this case where said evaluation, by the time of trial, no longer adequately reflected either Appellant or the minor child given the evaluation's temporal remoteness and the developmental gains experienced by both Appellant *748 and the child between the preparation of the evaluation and the time of trial?
Appellant's Brief, at 5.[2]
¶ 7 Our scope of review of a trial court's order of child custody is of the broadest type:
"In reviewing a custody order, an appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where it finds that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, an appellate court will not interfere with its order awarding custody."
Swope v. Swope, 455 Pa.Super. 587, 689 A.2d 264, 265 (1997) (citations omitted). The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. E.A.L. v. L.J.W., 443 Pa.Super. 573, 662 A.2d 1109, 1112 (1995) (citations omitted); see also 23 Pa.C.S.A. § 5303(a)(1).
¶ 8 Appellant's first issue raises two questions about the guardian ad litem, specifically, whether the trial court erred by appointing a guardian ad litem for T.W. in this custody case and whether the trial court erred by allowing the guardian ad litem to usurp the trial court's judicial power. As to the first question regarding the appointment, we need not address the merits of whether the appointment was proper because we are vacating the order and remanding based upon our finding that the trial court erred regarding the second question. For the purpose of this appeal, we will presume that the appointment of the guardian ad litem was proper.[3]
¶ 9 In his second question of the first issue, Appellant contends that the trial court abused its discretion by delegating to the guardian ad litem the court's judicial power to act as the trier of fact and the interpreter of law.
¶ 10 A guardian ad litem is appointed by the court to represent a minor *749 child in particular litigation. The function of the guardian is to represent and protect unrepresented minors and their interests. See In re Kenna's Estate, 348 Pa. 214, 218, 34 A.2d 617, 619 (1943); see also Estate of Pew, 440 Pa.Super. 195, 655 A.2d 521, 536 (1994). A guardian ad litem is not a judicial or quasi-judicial officer. However, throughout the custody hearing, the trial court repeatedly solicited the guardian ad litem for his advice and routinely accepted that advice. We find this solicitation to be a judicial abuse of discretion.
¶ 11 In a non-jury trial such as this, the role of the judge is to interpret the law, determine the facts and apply the facts to the law for an eventual decision of the controversy. The trial court may not delegate its judicial powers.
¶ 12 Before the trial, the trial court appointed Attorney Shucosky as the guardian ad litem for T.W. The court stated that it did so because the obvious lack of communication between the parents and their extreme hostility.
¶ 13 At the outset of this trial, the judge stated,
Although I have been doing this job for, I guess, nineteen years now, before I came hear I spent fourteen straight years in the District Attorney's Office and had nothing to do with civil law or never handled a custody case. When I got here, Mr. Shucosky was employed here as a Master in Custody handling all sorts of custody cases, and settling them and acting in the best interest of the children. If anything at all, Michael Shucosky taught me my job.
N.T., 7/19-21/99, at 93. This statement, at first glance, appears to be merely a veneration of Attorney Shucosky's ability to act in T.W.'s best interest as his guardian ad litem. However, as the custody hearing progressed, the trial court repeatedly solicited Attorney Shucosky's input on how to rule upon objections.
¶ 14 For example, during the custody hearing, Dr. Finn, who was the court-appointed expert for the custody evaluation, was going to give specific recommendations for therapy for the parents and T.W. Father objected on the grounds that any recommendation by a court-appointed expert would have the appearance that the court recommended it. After some discussion, the trial court then asked Attorney Shucosky, "How far should we go?" to which he replied, "My opinion is we're conducting testimony today and I've yet to hear an objection to the appropriateness of the question and answer presented. The objection to what would occur hereafter is for another time. This is an evidentiary objection." The trial court agreed and permitted the questioning to continue. See N.T., 7/26-28/99, at 50-52. Numerous times later, the trial court solicited the advice of Attorney Shucosky when making rulings on objections. See, e.g., N.T., 7/26-28/99, at 229, 232 (objections to whether Mother could testify that Father took cash when he left the familial home with T.W.); N.T., 9/29-30/99, at 95 (objection to question of whether Father's expert may state whether Dr. Finn's evaluation of Father was current).
¶ 15 In addition to soliciting Attorney Shucosky's opinions as to rulings during the custody hearing, the trial court also accepted a report and recommendation of the guardian ad litem. By its own admission, the trial court stated that it considered the recommendation of the guardian ad litem and gave it great weight when the court determined the final custody order of June 8, 2000.
¶ 16 In summation, we find that these are egregious examples of the trial court delegating its judicial power to a non-judicial officer. Throughout the custody proceedings, *750 the trial court repeatedly asked the guardian ad litem his opinion on evidentiary rulings and followed his opinions. Then on June 8, 2000, the trial court issued its custody order. This order closely followed the recommendations of the guardian ad litem, which was given to the trial court also on June 8th. We find that it was more than coincidental that the trial court's custody order was entered on the same day that the guardian ad litem delivered his recommendations to the trial court especially when considering the trial court's own admission that it was persuaded by the guardian ad litem's recommendations. This gives a different meaning to the trial court's statement, "If anything, Michael Shucosky taught me my job." It now appears that Attorney Shucosky did the job of the trial court, at the request of the trial court, by interpreting evidentiary law and making factual findings. We find that this is a clear and gross abuse of judicial discretion. Therefore, we vacate the custody order and remand for a new trial consistent with this opinion.
¶ 17 We recognize that the trial court states that the guardian ad litem's recommendations were only advisory and were treated as such. However, even assuming this was true, there is, at minimum, an appearance of impropriety. Because this appearance of impropriety led to the entry of the June 8th custody order, we also would vacate the custody order of June 8, 2000, for this reason.[4]
¶ 18 Order vacated. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.
NOTES
[1] This interim order was filed on December 16, 1998.
[2] Because we are vacating the order and remanding the case for further proceedings due to the court's allowing the guardian ad litem to usurp its judicial function, we do not reach issue two.
[3] We note that a guardian ad litem is not normally appointed in custody cases involving natural parents. A guardian ad litem is a person appointed by the court to represent a minor child's interest in particular litigation before the court. The appointment of a guardian ad litem is generally reserved for those actions where the trial court deems it necessary because the child's interest may be adversely effected, e.g., adoptions. However, in custody cases involving natural parents, despite the bitterness of each party towards each other, both parties are focused on the best interests of the child. See, e.g., Moorman v. Tingle, 320 Pa.Super. 348, 467 A.2d 359, 364 (1983). Moreover, in a custody case, the trial court is obliged to ascertain the child's best interest. See McMillen v. McMillen, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992). Since both parties and the trial court are focused on the child's best interests, it appears that the appointment of a guardian ad litem would not be proper absent extraordinary circumstances, and we note that bitterness between the parties ordinarily does not rise to the level of extraordinary circumstances needed for an appointment of a guardian ad litem.
[4] We also note that when we consider the actions of the trial court, i.e., following the recommendations of a minor party-representative, it appears that the trial court combined the role of a guardian ad litem with that of a master in custody, who by definition makes findings and recommendations to a trial court regarding custody.