Jacqueline Nieves CRUZ and Oscar Cruz, Appellants

v.

PRINCETON INSURANCE COMPANY, Alan S. Gold, Esquire and Gold, Butkovitz & Robins, P.C., Appellees.

Superior Court of Pennsylvania.

Argued Oct. 26, 2006.

Filed May 30, 2007.

Anne E. Pederson, Philadelphia, for appellants.

Jeffrey B. McCarron, Philadelphia, for Gold and Gold, Butkovitz & Robins, appellees.

Jonathan Bart, Philadelphia, for Princeton, appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN, TODD, BENDER, BOWES, and PANELLA, JJ.

OPINION BY BENDER, J.:

¶ 1 In this abuse of process action, Jacqueline Nieves Cruz and Oscar Cruz ("Appellants") appeal the October 18, 2004 orders granting summary judgment in favor of Princeton Insurance Company ("Princeton"), and Princeton's counsel, Alan S. Gold, Esquire and Gold, Butkovitz and Robins, P.C. ("GBR") (collectively, "Appellees"). After en banc argument and review of the briefs, the record, and the relevant law, we affirm.

¶ 2 In 1994, Appellants, individually and on behalf of their son, Adam, filed a medical malpractice action against Northeastern Hospital, Dr. Myung Hyo Shin, and Dr. Robert Cogan, seeking damages for permanent and debilitating injuries Adam sustained when he was born on August 14, 1992. Appellants dropped their individual claims and, in August 2000, a jury returned a verdict in favor of Adam and against the hospital in the amount of $10,811,431.27.[1] Following Appellants' motion for delay damages, the verdict was molded to over $15,000,000. The hospital and Appellants cross-appealed.

¶ 3 Princeton, the hospital's insurer, retained Attorney Gold of GBR to handle the appeal and related settlement negotiations. While the appeal was pending before this Court,[2] the parties began settlement negotiations before a mediator selected by Princeton. This mediator suggested a settlement in the range of $8 to $10 million. Settlement discussions continued through February 2002, but Appellants rejected

---

1. The jury found in favor of the physician defendants.

2. On April 17, 2002, this Court affirmed the judgment entered in favor of Appellants. *Cruz v. Northeastern Hospital,* 801 A.2d 602 (Pa.Super.2002).

Princeton's offer to settle the case for $7,000,000.

¶ 4 On February 27, 2002, on behalf of his client, Attorney Gold petitioned the court to appoint a guardian *ad litem* for Adam. The petition alleged in pertinent part:

6. Princeton and the Cruzes have engaged in excessive settlement negotiations with the aid of Abraham Gafni, former judge of the Court of Common Pleas of Philadelphia County as a mediator. The parties have reached an impasse in those negotiations. Princeton Insurance Co. has offered $7,000,000 to the Cruzes. This constitutes sufficient money to support [Adam] for the rest of his life. This money has been turned down.

7. Princeton Insurance Co. believes that a substantial possibility exists that Northeastern Hospital will prevail on the appeal and that the Cruzes may receive no money for [Adam].

8. [Adam's] medical expenses would then become a burden on the taxpayers of this Commonwealth.

9. [Adam] would not have the opportunity to have the full services that he would if his parents accepted the $7,000,000.

10. Princeton Insurance Co. respectfully requests that this Court appoint a guardian ad litem to evaluate the settlement demand and to represent the interest of [Adam] in this litigation.

11. Princeton believes that the parents have had a substantial disagreement among themselves concerning how to handle this litigation and whether to accept the settlement offer of Princeton Insurance Co. made on behalf of Northeastern Hospital.

12. Further, a potential conflict of interest exists between plaintiffs' counsel and the interests of her minor client, [Adam], particularly in light of disagreement among his parents with respect to the settlement offer.

13. The appointment of a guardian ad litem will insure that the interest of the child will be protected. The guardian ad litem would pursue the litigation on behalf of [Adam] and evaluate settlement offers.

Petition for Appointment of Guardian Ad Litem For Adam Cruz (Exhibit J to Motion of Defendants Alan S. Gold, Esquire And Gold, Butkovitz & Robins, P.C. for Summary Judgment ("Petition"), 2/27/02, at 2–3 (R.R. 658a–59a)). The trial court denied the petition on March 7, 2002, and, shortly thereafter, Appellants accepted in principle Princeton's settlement offer of $7,100,000. This offer was ultimately approved by the trial court on September 5, 2002.

¶ 5 On May 22, 2003, Appellants filed a complaint in the instant action for abuse of process against Appellees alleging that, by improperly filing the petition for appointment of a guardian *ad litem*, Appellees caused them "extreme emotional distress, fear, upset and anxiety that their parental rights could be terminated" and that they "became so fearful of subsequent assaults on their parental rights that they agreed to the settlement offer of $7,000,000 rather than to continue with negotiations." Complaint, 5/22/03, at 5 (R.R. 18a). On this latter contention, Appellants have since dropped any damages claim that, as a result of the filing of the guardianship petition, they were coerced into prematurely settling the case.[3]

¶ 6 Appellees filed separate motions for summary judgment, which the trial court granted in separate orders on October 18, 2004. Appellants' motion for reconsideration was denied, and this timely appeal followed. Initially, a three-judge panel of this Court reversed and remanded, but reargument was granted, and the matter is now before this Court *en banc*.

¶ 7 Our standard of review of an order granting or denying a motion for summary judgment is well established:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 8 This Court has previously discussed and defined the tort of abuse of process as follows:

> "Abuse of process" is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." *Shiner [v. Moriarty],* 706 A.2d [1228,] 1236 [ (Pa.Super.1998) ] (quoting *Rosen v. American Bank of Rolla,* 426 Pa.Super. 376, 627 A.2d 190, 192 (1993)).

> To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.

*Id.* Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. *McGee v. Feege,* 517 Pa. 247, 259, 535 A.2d 1020, 1026 (1987). Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question. *Rosen,* 627 A.2d at 192.

*Werner v. Plater–Zyberk,* 799 A.2d 776, 785 (Pa.Super.2002).

■ ¶ 9 Appellants first assert that the trial court erred in concluding that they failed to satisfy the first element of an abuse of process claim: that a legal process was used against them *individually*. *See Werner,* 799 A.2d at 785. The trial court, in ruling that the petition for appointment of a guardian was not directed at Appellants individually, reasoned:

> Appellants withdrew all of their own claims in their own right in the underlying medical malpractice action prior to its submission to the jury, proceeding solely in their capacity as the parents and natural guardians of their minor son Adam.... It is undisputed that the [guardian *ad litem* ] petition was filed against [A]ppellants in their capacity as the parents and natural guardians of Adam **only,** and not against them in their own right as individuals.

Trial Court Opinion, 2/15/05, at 4 (emphasis in original). The court thus found they

---

**3.** At *en banc* oral argument in this matter, Appellants' counsel confirmed that Appellants

were no longer seeking damages related to any coercion to settle the case.

lacked standing to bring an abuse of process action. *Id.*

¶ 10 We disagree. First, the petition itself is captioned against Appellants, "as parents and natural guardians of Adam," and against Appellants, "in their own right." Petition at 1. Thus, on its face, the petition was directed at Appellants individually.

¶ 11 Moreover, even if we found that the petition, formally and stylistically, was directed at Appellants only as the parents and natural guardians of Adam, we note, nevertheless, that the petition's undeniable aim was the removal of Appellants as Adam's guardians, if only with respect to settlement of the malpractice case. Thus, we reject the trial court's conclusion that, as a matter of law, Appellants, individually, were not the legal object of the petition for appointment of a guardian *ad litem.*

■ ¶ 12 Next, Appellants challenge the trial court's analysis of the second prong of an abuse of process claim: whether the process was used primarily to accomplish a purpose for which the process was not designed. *See Werner,* 799 A.2d at 785. Appellants argue that a jury should have been permitted to determine whether Appellees, by filing the petition, attempted to "coerce a settlement from Appellants at the threat of losing their individual right to make decision[s] that affected their son." Appellants' Brief at 27.

¶ 13 The primary evidence cited by Appellants in support of their claim that Appellees' use of the petition was illegitimate is the deposition testimony of Peter Leone, then-vice president of claims at Princeton. In pertinent part, Leone testified:

Q: I assume that one [parent] did not want to take [the initial settlement offer] and one did?

A: Correct.

Q: Did you believe that the one that did not want to take the settlement offer to be unreasonable?

A: No. What that demonstrated to me was that one parent realized that the amount of money was a fair number and was happy to take that number. That is all.

Q: But that the other parent did not feel that was a fair number?

A: And I felt maybe that parent needed an unbiased opinion from another party to say that number is fair, maybe you should take it, you should consider it strongly.

Q: It was your belief that the advice that they would receive from counsel who represented them from the beginning up to the time of trial and following that, not be sufficient?

A: I don't know what advice of counsel was at that point. We have cases where people don't believe what their counsel says. They don't take their counsel's advice when it comes to money. I've [had] many a counsel tell me that I have a client that is out of control.

* * *

Sometimes they use it as a tactic.

Q: So your sole purpose in this case was—I just want to make sure I'm clear—your sole purpose in having the petition filed on behalf of Princeton was to obtain an unbiased opinion as to the settlement offer?

A: My purpose was to get the case settled.

Q: Now, did you understand that a Petition to Appoint a Guardian Ad Litem—did you understand that one of it's [sic] purposes could be to get a case settled?

A: I don't think it's [sic] purpose was to get a case settled. I thought it was, again, to give an unbiased opinion so that it would be another factor to be considered by the Plaintiffs and maybe by the Plaintiffs' attorney and the judge, whoever else is involved in the case to say that the number on the table was a fair number.

Q: And to accept that number in such [sic] that the Plaintiff would accept the number that Princeton had offered?

A: Yes, or something close to it.

Q: Were you aware or did you have any understanding that there was any signs of mental incompetency on the part of the parents?

A: None whatsoever.

Q: Did you have an opinion that they were incompetent to act as parties?

A: No. I said before I thought they were lovely people, nice people.

Q: Did you have any indication that the parents had been physically abusive to Adam?

A: None at all.

Q: Any indication during the time of trial or afterwards that Adam had suffered from any type of physical or mental neglect?

A: None.

Q: Did you take issue in any way with the Cruzes as parents for Adam?

* * *

[A:] I thought they were lovely parents and doing a great job.

* * *

Q: Now, your goal is to have a guardian appointed to provide an unbiased evaluation of the settlement offer [and] to accept the settlement offer?

* * *

[A:] My goal was to get the case settled.

* * *

Q: In order for the guardian ad litem— assuming that he or she were appointed to evaluate the case, they would have to spend some time— they would be coming into the case new more likely than not, correct?

A: You're the attorney. You tell me what they would do. I'm not being pejorative. I made assumptions that again they would be giving unbiased opinions as to what the case was worth, what the chance of the appeal issue was going to be and whether or not the child was going to end up with no money and whether or not $7.1 million versus nothing was a good settlement.

Deposition of Peter Leone (Exhibit D to Response of Plaintiffs to Motion of Defendants Alan S. Gold, Esquire and Gold, Butkovitz & Robins, P.C. for Summary Judgment), 4/28/04, at 80–84 (R.R. 879a–880a).

■ ¶ 14 It is clear that a guardian *ad litem* should be appointed in only extraordinary cases, even where there is emotional conflict between parents:

A guardian *ad litem* is a person appointed by the court to represent a minor child's interest in particular litigation before the court. The appointment of a guardian *ad litem* is generally reserved for those actions where the trial court deems it necessary because the child's interest may be adversely effected, e.g., adoptions. However, in custody cases involving natural parents, despite the bitterness of each party towards

each other, both parties are focused on the best interests of the child. Moreover, in a custody case, the trial court is obliged to ascertain the child's best interest. Since both parties and the trial court are focused on the child's best interests, it appears that the appointment of a guardian *ad litem* would not be proper absent extraordinary circumstances, and we note that bitterness between the parties ordinarily does not rise to the level of extraordinary circumstances needed for an appointment of a guardian *ad litem*.

*C.W. v. K.A.W.*, 774 A.2d 745, 748 n. 3 (Pa.Super.2001) (citations omitted).

¶ 15 The trial court reviewed the evidence presented by Appellants and found that:

[Appellees'] action in seeking an appointment of a guardian *ad litem* to represent Adam's interests in the settlement of the underlying action was a legitimate object of the process, despite the fact that [Appellees'] petition to have such a guardian appointed was denied. *See McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020 (1987); Pa.Phila.Civ.R. 2039.1(C). The legal process employed in seeking the appointment of a guardian was appropriate to ensure that Adam's interests would be properly represented in settlement. The filing of the petition was not used to accomplish a purpose for which the process was not designed, even if the [Appellees] had an ulterior motive in reaching a settlement agreement in the underlying case. *See, Al Hamilton Contracting Co. v. Cowder*, [434 Pa.Super. 491, 644 A.2d 188 (Pa.Super.1994) ]. The evidence which [A]ppellants have produced in this action suggests nothing more sinister or malicious than a dispute over the settlement amount. The issue of whether the minor child's interests were being adequately protected by [A]ppellants, as his parents and natural guardians, in these settlement negotiations was not so definitive that [Appellees] should have been able to raise the question only at the risk of a second action for abuse of process. *See Mi–Lor, Inc. v. Dipentino,* [439 Pa.Super. 636, 654 A.2d 1156 (Pa.Super.1995) ]. (summary judgment in favor of defendant landlords affirmed in plaintiff tenants' claim of wrongful use of civil proceedings because there was no showing that the defendants attempted to misuse the civil process since there was a legitimate legal dispute). Accordingly, there are no facts to support the instant action for abuse of civil process.

Trial Court Opinion, 2/15/05, at 6.

¶ 16 While Appellees might have had motives other than the appointment of a guardian *ad litem* to protect Adam's interest, the petition did seek the appointment of a guardian and under the instant factual situation, such action was not inappropriate. The petition sought the appointment of a guardian *ad litem* to evaluate the settlement. *See* Petition for Appointment of Guardian, ¶ 10. While Appellees might have hoped this would help resolve the case, the petition was not used to accomplish a purpose for which the process was not designed. As stated above, a guardian *ad litem* should be appointed in only extraordinary cases. The fact that the instant case did not present such extraordinary circumstances does not give rise to an abuse of process cause of action. We conclude that the trial court did not commit an error of law or abuse its discretion in granting Appellees' motions for summary judgment.

¶ 17 Orders affirmed.

¶ 18 FORD ELLIOTT, P.J., MUSMANNO, LALLY–GREEN, BOWES and PANELLA, JJ. join the majority decision.

¶ 19 ORIE MELVIN, J. files a Concurring Opinion.

¶ 20 TODD, J. files a Dissenting Opinion in which STEVENS, J. joins.

## CONCURRING OPINION BY ORIE MELVIN, J.:

¶ 1 I concur in the decision to affirm the entry of summary judgment for the Appellees but would do so on a different basis.[4] Specifically, I would affirm on the ground that Appellants have failed to offer evidence from which a fact-finder could conclude as a matter of law that Appellants satisfied the third element of the abuse of process claim, i.e., harm caused to the plaintiffs.[5]

¶ 2 "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Werner v. Plater–Zyberk*, 799 A.2d 776, 785 (Pa.Super.2002). Abuse of process cases frequently turn on the second element of this three-part conjunctive test, and, hence, the courts of this Commonwealth have had little opportunity to discuss the third element of harm caused to the plaintiff.

¶ 3 In *Shiner v. Moriarty*, 706 A.2d 1228 (Pa.Super.1998), although it reversed the verdict on the plaintiffs' abuse of process claim on the grounds that such was preempted by the Bankruptcy Code, this Court arguably suggested that emotional harm is compensable in an abuse of process action by affirming the award of damages for emotional distress without differentiating between the three different theories presented (i.e., intentional inflection of emotion distress, abuse of process and intentional interference with contractual relations). *See id.* at 1239 (noting that expert medical testimony is not required to establish a claim for abuse of process). This Court did not describe the "emotional distress" alleged by the plaintiffs in *Shiner*. It does appear, however, that courts in other states generally recognize emotional harm as a compensable injury in abuse of process actions. *See generally* 20 CAUSES OF ACTION 223, Susan A. Lentz, Cause of Action for Abuse of Process §§ 9, 14 (2006); *see also Seltzer v. Morton*, 336 Mont. 225, 154 P.3d 561 (2007) (upholding damages award in abuse of process and malicious prosecution action where plaintiff testified he lived in a "state of panic" accompanied by physical complications of anxiety, including irregular bowel function, perpetual upset stomach and sleeplessness as a result of defendant's conduct); *Sanders v. Pete & Sons Garage, Inc.*, 769 S.W.2d 844 (Mo.Ct.App. 1989) (affirming grant of new trial to defendants on counterclaim of abuse of process where defendant testified that plaintiff's suit required her to appear in court and made her nervous, causing upset stomach and sleeplessness).

¶ 4 I conclude, however, that in this case Appellants have failed to show a *compensable degree* of emotional harm and, therefore, cannot establish the third element of their *prima facie* case. Critically, at his

---

4. Unlike the majority, I would find that the Appellants, by pointing to the deposition testimony of Peter Leone, have raised a genuine issue of material fact with regard to the second element of their abuse of process claim— whether the process was used primarily to accomplish a purpose for which it was not designed.

5. I recognize that this issue was not reached by the trial court below, but this Court may affirm on any basis supported by the record. *Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 928 (Pa.Super.2004).

deposition, Appellant Oscar Cruz testified as follows:

Q: Mr. Cruz, can you tell us what effect, if any, the petition to appoint a guardian had on the decision you and Jacqueline made to settle the case?

A: Well, when that petition, it's like Princeton would try, you know, do anything to give us pretty much nothing. So, from my understanding they put that petition together to have someone else decide how much should we get or not. So, it got me really upset.

\* \* \* \*

Q: Mr. Silverman asked you if you had any counseling from being upset about the [filing] of the petition?

A: Yes.

Q: Were you upset about the petition being filed?

A: Yes. But I didn't get any counseling for it. I was upset about it.

Q: Were you and Jacqueline both upset about it, to your knowledge?

A: Yes.

Q: What about it upset you?

A: That Princeton would try to go that far to, you know, so they could settle the case, I guess, for less or more, it doesn't matter. But to have someone else decide instead of us.

(Deposition of Oscar Cruz (Exhibit J to Response of Plaintiffs to Motion of Defendants Alan S. Gold, Esquire and Gold, Butkovitz & Robins, P.C. for Summary Judgment), 4/26/04, at 133–35 (R.R. 770–

772a).) Appellant Jacqueline Nieves Cruz testified as follows:

Q: Did you—when you did learn the petition had been filed, did you discuss this with Oscar?

A: Yes, I did.

Q: And what was the substance of that discussion with Oscar? What did you discuss?

A: I was upset.

\* \* \* \*

Q: And what did you tell him?

A: From my understanding, that I was—we were unfit parents.

Q: Okay. And when you say unfit parents, what do you mean by that?

A: I felt like—how can I say this? We wasn't worthy enough to make decisions for Adam, for his well-being. That's the way I felt.

\* \* \* \*

They were trying to put someone else as Adam's guardian, because like I said, we were not worthy to make any decisions for Adam.

(Deposition of Jacqueline Nieves Cruz (Exhibit K to Response of Plaintiffs to Motion of Defendants Alan S. Gold, Esquire and Gold, Butkovitz & Robins, P.C. for Summary Judgment), 5/15/04, at 91–93 (R.R. 775a–777a)).[6]

¶ 5 At most, Appellants have established that they were "upset" by the filing of the petition to appoint a guardian for their child. While I do not mean to suggest that they had no basis to be upset by that event, I conclude that mere upset as described above is insufficient as a matter of

6. While there is additional deposition testimony in the record from Jacqueline Nieves Cruz regarding anxiety and depression, she clarified that she was not attributing this to the actions of the defendants. *See* Deposition of Jacqueline Nieves Cruz (Exhibit G to Motion for Summary Judgment of Defendant Princeton Insurance Company), 5/15/04, at 721 (R.R. 466a); *see also id.* at 202–204 (R.R. at 474a).

law to satisfy the harm requirement of the claim for abuse of process. Accordingly, I concur in the result reached by the majority.

### DISSENTING OPINION BY TODD, J.:

¶ 1 Because I conclude that there remain genuine issues of material fact regarding Appellants' abuse of process claim, I would reverse the entry of summary judgment in favor of Appellees, and thus I dissent.

¶ 2 As the Majority has correctly stated, an abuse of process claim requires proof that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. *Werner v. Plater–Zyberk*, 799 A.2d 776, 785 (Pa.Super.2002). With respect to the first prong, I concur in the Majority's conclusion that Appellants were the legal object of the guardianship petition, and that the trial court erred in concluding otherwise.

¶ 3 With respect to the second prong, contrary to the Majority, I believe there remains a factual issue. The trial court concluded that "[t]he legal process employed in seeking the appointment of a guardian was appropriate to ensure that Adam's interests would be properly represented in settlement," and that "[t]he evidence which [A]ppellants have produced in this action suggests nothing more sinister or malicious than a dispute over the settlement amount." (Trial Court Opinion,

2/15/05, at 6.) I do not believe, however, that the evidence warrants so definitive a conclusion. While the trial court's interpretation of the evidence may be *one* reasonable interpretation, I find that a jury could, reasonably, come to a different conclusion—namely, that Appellees were seeking a guardian *ad litem* not for the primary benefit of Adam, a guardianship's undeniable aim, but for the primary benefit of orchestrating a settlement. Such use of the guardianship process would not be, in my view, a "legitimate object" of the process. *See Werner*, 799 A.2d at 785. Rather, I conclude that a jury could reasonably conclude that Appellees' actions were a "perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question"—that is, settlement of the malpractice case. *Id.* Accordingly, I conclude there remains a genuine issue of material fact with respect to this second prong.

¶ 4 With regard to the third prong—whether Appellants were harmed—I likewise conclude that there is an outstanding factual issue.[7] While much of Appellants' abuse of process claim related to their later withdrawn damages claim that filing the petition coerced them into prematurely settling the malpractice litigation, they also asserted emotional harm as a distinct element of their damages (*see* Complaint, 5/22/03, at 5), and I find they have supplied sufficient evidence to raise a jury question in that regard.[8]

---

**7.** Although neither the Majority nor the trial court addressed the harm prong, if, as a matter of law, Appellants cannot sustain this prong of their abuse of process claim, Appellees would nevertheless be entitled to summary judgment, and we could affirm the trial court on that basis. *See Shearer v. Naftzinger*, 560 Pa. 634, 638, 747 A.2d 859, 861 (2000) (a

lower court may be affirmed on any basis). Thus, I am obliged to address it.

**8.** Appellees do not dispute that emotional harm is compensable in an abuse of process action, and indeed this Court has so held. *See Shiner v. Moriarty*, 706 A.2d 1228, 1239 (Pa.Super.1998) (holding, *inter alia*, that expert testimony was not required to prove

¶ 5 Appellants cite to their deposition testimony as evidence that they were emotionally harmed. At his deposition, Oscar Cruz testified as follows:

Q: Mr. Cruz, can you tell us what effect, if any, the petition to appoint a guardian had on the decision you and Jacqueline made to settle the case?

A: Well, when that petition, it's like Princeton would try, you know, do anything to give us pretty much nothing. So, from my understanding they put that petition together to have someone else decide how much should we get or not. So, it got me really upset.

\* \* \*

Q: Mr. Silverman asked you if you had any counseling from being upset about the [filing] of the petition?

A: Yes.

Q: Were you upset about the petition being filed?

A: Yes. But I didn't get any counseling for it. I was upset about it.

Q: Were you and Jacqueline both upset about it, to your knowledge?

A: Yes.

Q: What about it upset you?

A: That Princeton would try to go that far to, you know, so they could settle the case, I guess, for less or more, it doesn't matter. But to have someone else decide instead of us.

(Deposition of Oscar Cruz (Exhibit J to Response of Plaintiffs to Motion of Defendants Alan S. Gold, Esquire and Gold, Butkovitz & Robins, P.C. for Summary Judgment), 4/26/04, at 133–35 (R.R. 770–

772a).) Further, Jacqueline Nieves Cruz testified as follows:

Q: Did you—when you did learn the petition had been filed, did you discuss this with Oscar?

A: Yes, I did.

Q: And what was the substance of that discussion with Oscar? What did you discuss?

A: I was upset.

\* \* \*

Q: And what did you tell him?

A: From my understanding, that I was—we were unfit parents.

Q: Okay. And when you say unfit parents, what do you mean by that?

A: I felt like—how can I say this? We wasn't worthy enough to make decisions for Adam, for his well-being. That's the way I felt.

\* \* \*

They were trying to put someone else as Adam's guardian, because like I said, we were not worthy to make any decisions for Adam.

(Deposition of Jacqueline Nieves Cruz (Exhibit K to Response of Plaintiffs to Motion of Defendants Alan S. Gold, Esquire and Gold, Butkovitz & Robins, P.C. for Summary Judgment), 5/15/04, at 91–93 (R.R. 775a–777a).)

¶ 6 Viewed in a light most favorable to Appellants, I find that this evidence demonstrates that the filing of the petition resulted in *some* emotional harm to Appellants. A jury could find that Appellants, faced with a petition alleging that a guardian *ad litem* was necessary to represent Adam's best interests in the settlement, and thus removing this decision-making

damages for emotional distress in an abuse of process claim). Rather, Appellees dispute

that Appellants have shown a *compensable degree* of emotional injury.

from them, were, unsurprisingly, distressed.

¶ 7 While Appellees counter that this evidence shows that Appellants' harm, if any, was minimal, they have failed to cite any caselaw suggesting that "upset" is an insufficient degree of compensable emotional harm, and I would not so conclude as a matter of law. Appellees also cite other evidence suggesting that Appellants were not distressed by the petition, that Appellants laughed about it. (*See* Princeton's Brief at 22.) Such evidentiary conflicts, however, simply reinforce, in my mind, Appellants' contention that the degree of their harm is a jury question.

¶ 8 For these reasons, I find that the trial court erred in granting Appellees' motion for summary judgment, and so I dissent.[9]

---

9. As an alternative basis for granting summary judgment in their favor, Appellees Gold and GBR assert that they cannot be held separately liable for abuse of process as they were only acting as counsel for Princeton, filed the petition at Princeton's request, and cannot be held vicariously liable for their client's abuse of process. (Brief for Gold and GBR, at 20–21.) I find they have waived this issue, however, as Gold and GBR failed to raise it below in their motion for summary judgment. *See Wagner v. Erie Ins. Co.,* 801 A.2d 1226, 1233–34 (Pa.Super.2002) (finding waiver where appellee did not raise issue in cross-motion for summary judgment, and thus trial court did not have opportunity to address it), *aff'd per curiam,* 577 Pa. 563, 847 A.2d 1274 (2004).