**Tupitza v. Martin**

*Michael J. Reed* and *James S. Tupitza,* for plaintiffs.
*Arthur W. Lefco, Aaron E. Moore, Jeffrey B. McCarron* and *Kathleen M. Carson,* for defendants.

MASSIAH-JACKSON, *J.,* July 1, 2010—This matter now comes before the Honorable Superior Court for the third time. See *In re Estate of Young,* 2787 EDA 2006 (Pa. Super. 2007) *(Young I); In re Estate of Young,* 1761 EDA 2008 (Pa. Super. 2009) *(Young II).*

When Mrs. Helen Young died in June 2003, her daughter, Deborah Young Hamilton retained the Martin attorneys (appellees). Mrs. Hamilton sought counsel in order to scrutinize her mother's inter vivos transactions in Orphans' Court and to file a civil action for money damages in her individual capacity.

In 2006, shortly after the Orphans' Court issued a comprehensive opinion disposing of all matters, Mrs. Hamilton determined that she no longer was able to proceed with civil proceedings.

In May 2008, James S. Tupitza, Esquire and Harriet Young Tupitza (Mrs. Hamilton's sister and brother-in-law) filed this Dragonetti action against the Martin attorneys.

On April 29, 2010, this court granted the Martin attorneys' motion for summary judgment. See court exhibit "A", attached hereto. Notice of appeal was filed on May 26, 2010.

In accordance with Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, this court respectfully submits to the Honorable Superior Court, the memorandum in support of order granting summary judgment in favor of all defendants, dated April 29, 2010, attached hereto as court exhibit "B", as the reasons for the rulings and order.

---

COURT EXHIBIT "A"

MASSIAH-JACKSON, *J.,* April 29, 2010—

ORDER

And now, April 29, 2010, after consideration of defendants' motion for summary judgment, and plaintiffs'

response thereto, and after supplemental memoranda have been filed by all parties, and for the reasons set forth in the memorandum filed this date, it is hereby ordered that the motion for summary judgment filed by Thomas E. Martin Jr., Esquire, Aaron Diego Martin, Esquire and Martin Law Offices LLP, is granted.

---

## COURT EXHIBIT "B"

MASSIAH-JACKSON, *J.,* April 29, 2010—

I. *Factual Background and Procedural History*

This motion for summary judgment has been filed by Thomas E. Martin Jr., Esquire, Aaron Diego Martin, Esquire, and Martin Law Offices LLP (Martin attorneys), in this civil action brought against them by the sister and brother-in-law of their client, Mrs. Deborah Young Hamilton. James Tupitza, Esquire and Harriett Young Tupitza, plaintiffs herein filed an action alleging wrongful use of civil proceedings (Dragonetti Act), 42 Pa.C.S. §8351 et seq. and abuse of process, as a result of civil actions filed in the Chester County Court of Common Pleas in 2004, no. 04-04997 and no. 04-04998.

When reviewing the record in the light most favorable to the non-moving party, we note that in 1998, the Young family's farm consisted of 190 acres in Chester County. Mrs. Helen Young had three daughters. Her 1998 final will bequeathed $1,000 to daughter Hannah, with the remainder of the estate to be divided equally between daughters Harriett and Deborah.

Mrs. Young was diagnosed with ALS, a terminal illness, in the spring of 2002. Mrs. Young delivered inter vivos gifts of real estate in 2002. James Tupitza, Esquire, husband of daughter Harriett, prepared the documents to subdivide the land, and, to create a deed which conveyed 154 acres of land and the main farm house to his wife and to himself. He also established a power of attorney naming Harriett Tupitza, as agent of her mother. James Tupitza, Esquire prepared a deed to convey approximately 2.2 acres of land and the tenant house to Deborah.

In March 2003, daughter Harriett Young Tupitza and James Tupitza, Esquire, reconveyed the 154 acres to themselves and recorded the deed. Joint title was required as part of construction loan financing to rehab the main farm house.

On June 16, 2003, Mrs. Helen Young died without assets in her estate. Deborah Hamilton retained the Martin attorneys. As a result of the inter vivos conveyances in 2002, she was denied one-half share of her mother's estate.

Deborah Hamilton retained the Martin attorneys to file objections to the first account in probate, challenging inter alia, the large land conveyance in 2002, to Deborah's sister Harriett and Harriett's husband, James Tupitza, Esquire. Deborah also filed a petition to remove Harriett as executrix of their mother's estate, citing the conflicts of interest on Harriett's fiduciary responsibilities.

Deborah also retained the Martin attorneys to file civil actions, in her individual capacity seeking monetary damages.

Summary judgment may be entered only if the pleadings, depositions, answers to interrogatories and admissions, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Rule 1035 of the Pennsylvania Rules of Civil Procedure, The principal issue in this case is whether the Martin attorneys had probable cause to bring the civil action for monetary damages or whether they acted for an improper purpose.

This court was assigned the summary judgment motion on March 25, 2010. All counsel have fully cooperated. They participated in a telephone conference, filed supplemental memoranda and submitted other documents. For the reasons which follow, the Martin attorneys' motion for summary judgment is granted.

## II. *Legal Discussion*

### A. As the Representatives of Their Client, the Martin Attorneys Properly Performed Their Functions As Advisors, Advocates, Negotiators and Evaluators of the Legal Rights and Obligations of Deborah Hamilton

The liability of an attorney in a Dragonetti Act claim is grounded in the Restatement (Second) of Torts, §674, comment d, which has been repeatedly cited by our Honorable Superior Court. *e.g., Gentzler v. Atlee,* 443 Pa. Super. 128, 660 A.2d 1378 (1995); *Z.H. Meiksin v. Howard Hanna Company Inc.,* 404 Pa. Super. 417, 590 A.2d 1303 (1991); *Shaffer v. Stewart,* 326 Pa. Super. 135, 473 A.2d 1017 (1984). In *Meiksin, supra,* the Superior Court noted, 404 Pa. Super at 420-21, 590 A.2d at 1305:

"Regarding the liability of an attorney for the wrongful use of civil process, the Superior Court has followed the Restatement (Second) of Torts §674 comment d (1977), where the law is stated as follows:

" 'An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action (see section 675); and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. (See section 676.) An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

"If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.' " (citations omitted)

The cause of action for abuse of process requires an act or threat not authorized or with an objective which is not legitimate. In *Cruz v. Princeton Insurance Company,* 925 A.2d 853 (Pa. Super. 2007), the appellate court noted at 856:

" 'Abuse of process' is defined as 'the use of legal process against another primarily to accomplish a pur-

pose for which it is not designed.' *Shiner [v. Moriarty]*, 706 A.2d [1228] 1236 [(Pa. Super. 1998)] (quoting *Rosen v. American Bank of Rolla*, 426 Pa. Super. 376, 627 A.2d 190, 192 (1993)).

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.

"*Id.* Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. *McGee v. Feege,* 517 Pa. 247, 259, 535 A.2d 1020, 1026 (1987). Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal of the procedure in question. *Rosen,* 627 A.2d at 192. *Werner v. Plater-Zyberk,* 799 A.2d 776, 785 (Pa. Super. 2002)."

It appears that John Tupitza, Esquire and Harriett Young Tupitza base their abuse of process claim on a notion that the Martin attorneys seek to harass or punish. Even assuming arguendo that were accurate, abuse of process would not be found. It is not enough that a defendant has bad or malicious intentions or that the defendant acted from spite or even with an ulterior motive. *Rosen v. Tesora Petroleum Corporation,* 399 Pa. Super. 226, 237, 582 A.2d 27, 32-33 (1990), *allocatur denied,* 527 Pa. 636, 592 A.2d 1303 (1991). Where, as here, the Martin attorneys, acting on behalf of their client, did no more than carry out the authorized process to its authorized conclusion, then this court concludes there is no

evidentiary support for the contention that the lawyers acted to pervert the process. Counsel cannot be found liable simply because the trial courts and/or Superior Court did not accept their claims. See also, *Al Hamilton Contracting Co. v. Cowden,* 434 Pa. Super. 491, 644 A.2d 188 (1994) and numerous cases cited at 498-99, 644 A.2d at 191-92.

## B. All Claims Relating to Civil Action No. 04-04998 Are Barred by the Statute of Limitations

On November 18, 2005, when Honorable Ronald C. Nagle, sustained preliminary objections to Deborah Hamilton's action in equity, these attorney-defendants did not appeal that decision nor take any further action. The case was terminated.

This litigation commenced three years later in May, 2008. Plaintiffs-Tupitza are barred from making claims based on Dragonetti or abuse of process by the two-year statute of limitations.

## C. Every Court That Has Viewed These Facts Has Recognized Probable Cause for Civil Damages or Equitable Relief

In November 18, 2005, when Honorable Ronald C. Nagle considered the Tupitzas' preliminary objections to Mrs. Hamilton's civil action at law, no. 04-04997, he commented at n. 1:

"The burden of discovery the legal theory underlying a plaintiff's complaint is on the court. . . . It appears that plaintiff has pled a cause of action. . . . However, plaintiff should have brought either an action to quiet title or

for declaratory judgment requesting equitable relief. . . ." (citations omitted)

When faced with the same facts in Chester County Orphans' Court, Honorable Katherine B.L. Platt noted at page 12 of her opinion:

"I do not disagree with Deborah's contention that aspects of James Tupitza's involvement are malodorous, nor that the result of her mother's lifetime giving was wholly unfair to Deborah relative to Harriet."

Judge Platt stated that the "assistance" of James Tupitza might be actionable by Mrs. Young's estate after an investigation by a successor executor. The judge listed certain areas where inquiry might be appropriate at pages 15-16:

"It must be made clear here that I am not determining that James Tupitza has or has not committed actionable ethical violations or breached his duty of care to Mrs. Young. Unfortunately, I improvidently precluded Deborah's counsel from introducing evidence on those issues, particularly the ethical concerns. As a result, the record before me is inadequate to draw any dispositive conclusions in those areas of concern, but just some of the issues which give me pause include:

"(a) James Tupitza knew Mrs. Young had a will prepared by Louis Teti, a long-time professional acquaintance. Yet he considered that he had a lawyer-client relationship with Mrs. Young and gave her estate planning advice.

"Did he undertake to explain to Mrs. Young that the conveyances of her real estate to her children would nullify her testamentary intentions?

"If he did not know of the testamentary scheme, why did he not make himself aware prior to undertaking a wholesale divesting of assets for Mrs. Young in the guise of estate planning?

"(b) The deed of Harriet for lot no. 1 prepared by James Tupitza necessarily benefited James Tupitza, not just indirectly, but directly.

"(c) The deed prepared by James Tupitza conveying lot no. 3 by Mrs. Young to Deborah and Edward Hamilton contains a right of first refusal to Harriet. There is no reciprocal provision in the deed to Harriet, also prepared by James Tupitza.

"(d) The mortgage from Deborah and Edward Hamilton to Mrs. Young drafted by James Tupitza, was recorded immediately by James Tupitza to 'choke the equity' in the transfer to Deborah.

"(e) The mortgage from Harriet to Mrs. Young in the principal amount of $1,000,000 was never recorded.

"(f) The notes, allegedly prepared for 'tax purposes' contain no interest rate and recite their automatic satisfaction on Mrs. Young's death. These attributes provide no discernible tax benefits that have been explained to me. In fact, it has been argued that exactly the opposite result was obtained.

"(g) The inter vivos transfers were taxable for both the Pennsylvania Inheritance and Federal Estate taxes as a result of being made within a year of Mrs. Young's death. By the terms of Mrs. Young's will, all taxes were to be borne by the residuary estate in which Deborah and Harriet are equal beneficiaries. As the gift to Harriet of lot

no. 1 represents the overwhelming portion of the taxable estate, the tax burden is disproportionately borne by Deborah.

"I am sufficiently concerned about the propriety of James Tupitza's conduct and possible breach of his duty to the late Mrs. Young, that I must allow her estate to investigate further. That role must be undertaken by Mrs. Young's personal representative, and Harriet Tupitza cannot do so as she is not only married to James Tupitza, but she and James Tupitza benefited from all transactions."

When the Honorable Superior Court heard *In re Estate of Young,* no. 2787 EDA 2006 (Pa. Super. 2007) (*Young I*), President Judge Emeritus Stephen McEwen authored a concurring statement to again highlight the challenge to the substituted executor of Mrs. Young's estate:

"the ruling of the trial court [Judge Platt] . . . will not preclude a substitute personal representative of the estate (1) from conducting a further investigation and analysis of the methods used to effect the subdivision and transfers of Mrs. Young's real property, or (2) from, if appropriate, presenting a claim *by the estate* to the title to that property." (emphasis in original)

Recently, on March 4, 2009, in *Young II,* a different panel of the Honorable Superior Court reiterated President Judge Emeritus McEwen's concurring statement, and added at page 10:

"We further conclude that the trial court's decision does not prohibit appellant [Mrs. Hamilton], in her individual capacity, from filing a civil action against James Tupitza."

In *In re Estate of Young,* no. 1761 EDA 2008 (Pa. Super. 2009) (*Young II*), that court repeated at page 13:

"Consistent with the rationale in *Strunk Estate* [453 Pa. 19, 307 A.2d 839, (1973)], we agree with President Judge Emeritus McEwen's concurrence in *Young I* and conclude that a substituted representative is not precluded from commencing an action on behalf of Young's estate, claiming title to and ownership of the farm or otherwise seeking monetary consideration."

Each of these distinguished courts, trial and appellate, concluded in dicta that the circumstances of the 2002 conveyance from Mrs. Helen Young to James Tupitza, Esquire and Harriett Young Tupitza, provides probable cause to file a claim or initiate other legal action by the estate and/or Mrs. Hamilton in her individual capacity.

This court also concludes that the Martin attorneys had probable cause, pursuant to 42 Pa.C.S. §8352, to initiate and to continue the civil proceedings, Harriett Tupitza, as executrix, had a fiduciary duty to not create a conflict of interest through self-dealing or benefit or profit. James Tupitza, Esquire, acting as Mrs. Young's attorney, directly and indirectly, benefited from the land transfer while his mother-in-law was alive in 2002, and also from the estate after she passed away. See also, *In re Paxon Trust,* 893 A.2d 99, 120 (Pa. Super. 2006), citing *Banes Estate,* 452 Pa. 388, 305 A.2d 723 (1973); *Noonan Estate,* 361 Pa. 26, 63 A.2d 80 (1949).

Probable cause is an indispensable element of a Dragonetti action. "Absent material conflicts in the evidence, the presence or absence of probable cause is for the court to determine." *Meiksin v. Howard Hanna Company Inc.,*

404 Pa. Super. 417, 421, 590 A.2d 1303, 1305 (1991) and cases cited. "If probable cause is shown to have existed, an absolute defense is established against [a case] for malicious prosecution, even when express malice is proved." *Meiksin, supra* at 421, 590 A.2d at 1305, quoting 52 Am.Jur.2d malicious prosecution section 50 (1970). This Dragonetti action is without merit.

### D. The Martin Attorneys Did Not Demonstrate Malice Nor Were They Grossly Negligent

The underlying litigation of civil action no. 04-04497 was commenced in June 2005. Not until February 2006, did the Tupitzas (defendants in the underlying case) file their amended answer to the amended complaint and new matter.

The Orphans' Court hearing convened in April 2006, and Judge Platt issued her comprehensive decision on August 30, 2006. James McBride, Esquire, testified at his deposition, at N.T. 23:

"I do recall getting the opinion of Judge Platt, and for whatever reason, it appears that I think—somewhat to Aaron's surprise—that she decided to litigate almost all the issues in the case, even those that were before Judge Nagle."

The record reflects that 60 days later, on October 30, 2006, the Martin attorneys withdrew the counts of the amended complaint. It is clear that the Martin attorneys did not unduly prolong or "continue" the civil proceedings against John Tupitza, Esquire and Harriett Young Tupitza. As soon as the Orphans' Court decision was

released, counsel reassessed their civil cause of action. This court concludes that there is no evidence of an intent "to harass or maliciously injure the opposite party," per 42 Pa.C.S. §8352(3).

The Tupitzas, plaintiffs herein, contend that because the Martin attorneys pursued an appeal to Count I of the civil action, intentional interference with inheritance, per Restatement (Second) of Torts, §774B, they were grossly negligent or showed malice. This court does not agree.

The Martin attorneys were reasonable when pursuing the claim for appellate review when the factors in Deborah Hamilton's matter so closely mirrored the considerations set forth in the Restatement. Their client was convinced that her mother would not knowingly convey such a disproportionate share of the farm acreage to James and Harriett Tupitza in the absence of interference. March 10, 2005, N.T. 39-43; Orphans' Court, April 7, 2006, N.T. 54-55; deposition, November 23, 2009, N.T. 25-28, 46-48, 55-56. Unlike *Hollywood v. First National Bank of Palmerton,* 859 A.2d 472 (Pa. Super. 2004), where the Superior Court determined that the facts suggested, "mere negligence," here the inter vivos transfers by Mrs. Young with the "assistance" of her son-in-law, might well have presented demonstrable interference to compel a reassessment of Pennsylvania's definition of the tort.

Finally, James and Harriett Tupitza claim that the Martin attorneys were grossly negligent or showed malice by contacting the Internal Revenue Service. This caused the Tupitzas to expend resources to defend themselves from the tax assessment and deficiency notice.

Here, as noted in *City of Coatesville v. Jarvis,* 902 A.2d 1249, 1253 (Pa. Super. 2006), the Martin attorneys did not initiate, procure or continue a legal proceeding when the IRS has an established procedure where their client, Deborah Hamilton, might be eligible for a finder's fee. Deposition of Thomas A. Martin, June 29, 2009, N.T. 56-59. It was the IRS which conducted the inquiry and not the Martin attorneys. To hold that it was the Martins who initiated, procured or continued legal proceeding under these facts, would permit liability to be imposed in virtually any case in which a defense was raised to an administrative proceeding. See *Al Hamilton Contracting Company v. Cowder,* 434 Pa. Super. 491, 644 A.2d 188 (1994).

In *Hart v. O'Malley,* 781 A.2d 1211 (Pa. Super. 2001), the appellate court reiterated the definition of gross negligence at 1218:

"Gross negligence is defined, inter alia, as a lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages . . . Gross negligence has also been described as 'the want of even scant care' and the 'failure to exercise even that care which a careless person would use.' (citations omitted)

James Tupitza, Esquire and Harriett Young Tupitza are unable to demonstrate on this record that the Martin attorneys acted with malice or without probable cause or with reckless disregard or in a grossly negligent manner.

432

## III. *Conclusion*

More than one hundred years ago, in *Wise's Estate,* 182 Pa. 168, 171, 37 A. 936 (1897), our Pennsylvania Supreme Court held:

"Transactions by which a decedent shortly before his death practically strips himself of all his available property are naturally regarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye."

See also, *Hera v. McCormick,* 425 Pa. Super. 432, 450, 625 A.2d 682, 691 (1993); *Estate of Keiper,* 308 Pa. Super. 82, 454 A.2d 31 (1982). The only way for Deborah Hamilton to scrutinize her mother's transactions was by engaging the civil process through her attorneys.

After reviewing the chronology of events and considering the circumstances in a light most favorable to Mrs. Young's daughter and son-in-law, the non-moving parties, summary judgment is granted in favor of the Martin attorneys.