J-S05015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.W., BIOLOGICAL | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1297 WDA 2018 |

Appeal from the Order Entered August 14, 2018
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000021-2018

BEFORE: PANELLA, P.J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, P.J.: **FILED MARCH 29, 2019**

K.W. ("Father") appeals from the order that involuntarily terminated his parental rights to his son, B.P. ("Child") (born October 2014), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101–2938, based upon the allegations of the Allegheny County Office of Children, Youth and Families (CYF).[1] After careful review, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court also involuntarily terminated the parental rights of Child's mother, L.P. ("Mother"), and any unknown father of Child. Neither Mother nor any unknown father filed a notice of appeal, and neither Mother nor any unknown father have participated in this appeal. Mother did file a concise statement of errors complained of on appeal in the orphans' court, which the court struck, pursuant to a motion filed by CYF, as no notice of appeal was filed by Mother. Further, Father and Mother withdrew their opposition to the court involuntarily terminating Father's and Mother's parental rights to an older child, A.W. (born August 2004). ***See*** N.T., 8/10/18, at 213-14.

The orphans' court set forth the following procedural and factual history of this case:

> [Child] was born in October 2014 to [Mother] and [Father]. The family came to the attention of CYF in September 2012, prior to [Child]'s birth, after a court proceeding in the Allegheny County Court of Common Pleas Family Division resulted in a CYF investigation and acceptance of the family for services. At that time, Mother and her daughter[,] A.W. (D.O.B: [August 2004])[,] resided with the children's maternal grandmother. The CYF investigation revealed conflict between Mother and maternal grandmother, with Mother seeking to leave their shared residence. CYF additionally reported an "on-again, off-again" relationship between Mother and Father, with reports of past domestic abuse. After providing the family with services, CYF's involvement with the family ended on July 3, 2013.
>
> On March 3, 2016, CYF again became involved with the family after reports of new conflict between Mother and maternal grandmother that resulted in maternal grandmother seeking a protection from abuse (PFA) order against Mother. A CYF investigation found that Mother, having left maternal grandmother's home, was residing with a paternal aunt. At that time[,] [Child] was residing with maternal grandmother and A.W. was residing with a maternal aunt. CYF sought and obtained an Emergency Custody Authorization order out of concern that Mother was homeless and additionally because maternal grandmother reported needing assistance with [Child], and Father was not consistently involved in the care of his children. . . . This [c]ourt adjudicated [Child] and A.W. dependent on October 20, 2016.

Orphans' Court Opinion, 10/18/18, at 2-3 (citations to the record omitted).

On January 19, 2018, CYF filed a petition to involuntarily terminate the parental rights of Father and Mother to Child. The court subsequently held a hearing on the petition.

CYF presented the testimony of Sally Fink, a CYF caseworker; Neil Rosenblum, Ph.D., who performed psychological evaluations; and. T.W.

- 2 -

("Foster Mother"), Child's paternal aunt and kinship foster parent. Mother presented the testimony of Susan Meyer, who provided Mother with in-home services and visitation coaching through Holy Family Institute; and Derrick Johnson and Jessica Mulroy, service drivers for A Second Chance, who provided transportation for Mother's visitation. Both Father and Mother attended the hearing and were represented by counsel; however, neither testified. On August 14, 2018, the orphans' court entered the order involuntarily terminating Father's parental rights to Child.[2] Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issues for our review:

---

[2] On April 11, 2018, the court appointed conflict counsel for Child. Attorney Eli A. Zlokas entered his appearance on behalf of Child on April 20, 2018. Due to Child's age (approximately three years and ten months old), "across the board developmental delays," N.T., 8/10/18, at 98, diagnosis of autism spectrum disorder, *see id*., limited tolerance for social interaction, *see id*. at 114, and "deficits in his ability to attach to anyone," *id*. at 115, there was no conflict between Child's best and legal interests. *See In re T.S.*, 192 A.3d 1080.

At the conclusion of the hearing, Attorney Zlokas noted that due to Child's diagnosis, any change in circumstances or routine would have a negative impact on Child. *See* N.T., 8/10/2018, at 211-12. Accordingly, he argued against the termination of Father's and Mother's parental rights. *See id*. However, a "guardian *ad litem* is not a judicial or quasi-judicial officer." *C.W. v. K.A.W.*, 774 A.2d 745, 749 (Pa. Super. 2001) (citation omitted). A court may not delegate its duty to determine the best interests of the child to the guardian *ad litem*. *See id*. Therefore, the court was not required to assign any special weight to Attorney Zlokas's position on the best interests of Child.

1. Did the [orphans' c]ourt abuse its[] discretion and/or err as a matter of law in concluding that the termination of [] Father's parental rights would [] best serve the needs and welfare of the child pursuant to 23 Pa.C.S.[A.] § 2511(a)(2)[?]

2. Did the [orphans' c]ourt abuse its[] discretion and/or err as a matter of law in concluding that the termination of [] Father's parental rights would [] best serve the needs and welfare of the child pursuant to 23 Pa.C.S.[A.] § 2511(a)(5)[?]

3. Did the [orphans' c]ourt abuse its[] discretion and/or err as a matter of law in concluding that the termination of [] Father's parental rights would [] best serve the needs and welfare of the child pursuant to 23 Pa.C.S.[A.] § 2511(a)(8)[?]

4. Did the [orphans' c]ourt abuse its[] discretion and/or err as a matter of law in concluding that the termination of [] Father's parental rights would [] best serve the needs and welfare of the child pursuant to 23 Pa.C.S.[A.] § 2511(b)[?]

Father's brief at 8.[3]

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

---

[3] Father's brief improperly combines his four issues into one argument in the argument section of his brief. *See* Pa.R.A.P. 2119(a) (stating argument section shall be divided into as many sections as there are questions to be argued, followed by discussion and citations to pertinent legal authorities).

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quotation marks and citations omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (8), as well as (b). This Court may affirm the orphans' court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus our analysis on Section 2511(a)(2) and (b), which, in relevant part, provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(a)(2) and (b).

Our Supreme Court set forth our inquiry under Section 2511(a)(2) as follows:

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continuous incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal will not

be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2) are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See id*., at 340. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id*.

With respect to Section 2511(a), Father argues the court improperly terminated his parental rights because CYF did not prove, by clear and convincing evidence, that the conditions and causes that existed when Child came into care were not rectified by Father. *See* Father's Brief at 16-17. Further, Father argues that, while he was not a consistent presence in Child's life, by the time CYF filed the petition to terminate his parental rights, Father was an active participant. *See id*. at 17. Father contends he met all court-ordered goals, and was a constant presence in Child's life, providing for Child's needs. *See id*.

Addressing its application of Section 2511(a), the orphans' court concluded:

> With respect to Father, although he has attended parenting classes and visited with [Child], Father has never provided [Child] with daily parental care and supervision, and Father's "repeated

and continued incapacity" has "caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being." *See* 23 Pa.C.S.A. § 2511(a)(2). Father has not provided consistent parental care to [Child] at any time since his birth, and even his visitation has been irregular. Father has not demonstrated that he will be able to provide for [Child]'s daily needs. Given Father's failure to make parenting a priority, this [c]ourt concluded that Father has not in the past, and will not within a reasonable time, be able to provide for [Child]'s needs, and that terminating Father's parental rights would best serve the needs and welfare of [Child]. Father's career choices, and his own statements evidencing a lack of commitment to providing for [Child]'s full time care[,] together with his own mental health concerns, his withdrawn and solitary lifestyle, and his emotionally distant nature[,] have interfered with and prevented him from prioritizing [Child]'s needs and providing him with the parental care and supervision that he requires. Even though Father is no longer employed as a professional gambler, he has not demonstrated a commitment to visitation, to managing and providing for [Child]'s developmental, emotional and psychological needs, and termination of his parental rights best serve the needs and welfare of the child.

Orphans' Court Opinion, 10/18/18, at 15-16 (citations to the record omitted).

Our review of the record supports the orphans' court's finding of sufficient grounds for termination under Section 2511(a)(2). In March of 2016, CYF received a report of domestic violence between Mother and Child's maternal grandmother, with whom Child and Mother lived at the time. *See* N.T., 8/10/18, at 11-12. Mother moved out, leaving Child with his maternal grandmother, who indicated she needed assistance caring for Child. *See id.* at 12-13. CYF obtained an Emergency Custody Authorization on August 10, 2016. *See id.* At that time, Father, who had never parented Child full-time, did not ask for custody of Child. *See id.* at 13, 30, 34. Child was adjudicated dependent in October 2016, and Father's goals were to complete parenting

classes, attend couples counseling, comply with in-home services, and to exercise his unsupervised visitation. *See id.*

Fink, the CYF caseworker, conceded that Father met most of his goals, although Father did not fully take advantage of his overnight visitation to the extent that he could. *See id.* at 70-71, 88-89. As it relates to visitation, Father had liberal unsupervised visitation, including, as of May 2017, unsupervised overnight visits. *See id.* at 34-35. Father was permitted to exercise as many overnights as he could, essentially giving him an opportunity to parent full-time. *See id.* at 75, 80. Although Father had the opportunity for overnight visits with Child in May of 2017, Father did not take advantage of an overnight visit with Child until November of 2017. *See id.* at 34-35. Thereafter, Father sporadically had overnight visits, exercising three overnight visits a month from November 2017, through March 2018, with the exception of January 2018, when Father had two overnights. *See id.* at 35-36. However, following March 2018, through the termination hearing in August 2018, Father only had one overnight in April 2018, and one in June 2018. *See id.* at 36-37.

Fink testified that Father initially told her that he was a professional gambler, and blamed his inability to have more time with Child on his job. *See id.* at 34, 75-77. Father later worked for a family business, but still suggested his job did not allow him to parent Child full-time. *See id.* at 34, 38-39, 77. Father informed Fink he wanted Foster Mother to care for Child full-time. *See id.* at 34, 38-39.

Dr. Rosenblum performed psychological evaluations in September 2016, October 2017, and March 2018.[4] *See id.* at 97. Dr. Rosenblum noted that Child has "across the board developmental delays" and has been diagnosed with autism spectrum disorder. *See id.* at 98. Because of Child's condition, he requires someone who can coordinate his medical care and provide a routine that is consistent, while reliably working to support Child's progress. *See id.* at 98-100. Dr. Rosenblum believed that Father loved Child, but could not orient his lifestyle to provide the support Child requires. *See id.* at 110-11. For instance, Dr. Rosenblum noted that attending school consistently is important for Child, yet, when Father exercised time with Child, he generally did not take Child to school. *See id.* at 111-12.

Dr. Rosenblum opined that Father is not a natural fit for parenthood: "being a parent and taking care of people on a day-in day-out basis, I'm a hundred percent positive is not something that [Father]'s ever been cut out to do." *See id.* at 110. Dr. Rosenblum later opined that appropriately parenting Child "is not something that's in his DNA in my opinion." *See id.* at 112-13.

Similarly, Fink noted Father did not express a desire for reunification, but rather for Child to be cared for primarily by Foster Mother. *See id.* at 34, 38-39. Fink opined that while Father appropriately cared for Child when he

_____

[4] The court admitted Dr. Rosenblum's evaluations as CYF Exhibit 4. *See* N.T., 8/10/18, at 145. However, neither the evaluations, nor the other exhibits admitted at the hearing, were included in the certified record.

was in Father's care, Father did not make Child a priority in his life. **See id.** at 38-39.

As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006). The record substantiates the conclusion that Father's repeated and continued incapacity or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. Moreover, Father cannot or will not remedy this situation. As noted above, in order to affirm a termination of parental rights, we need only agree with the orphans' court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). **See In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any,

- 11 -

between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

Father argues the orphans' court erred because there is a bond between Father and Child, but the court did not acknowledge the bond. *See* Father's brief at 19. Further, Father claims that it is not sufficient to conclude that Child's prospective adoptive home may be more advantageous than living with Father. *See id.*

Father faults the orphans' court for failing to acknowledge that Father spent countless hours participating in therapy with Child. *See id.* at 20. Father argues the orphans' court erred by concluding that Child's medical improvement is related to Foster Mother, rather than Father. *See id.* at 20-21. Father also contends that there is insufficient testimony regarding the bond between Child and Father, and the impact terminating Father's parental rights will have on Child. *See id.* at 21.

The orphans' court explained its analysis of Section 2511(b) as follows:

> Evidence and testimony presented at the hearing indicated that although [Child] may display gladness to see Mother and Father during visits, [Child] "is not capable of forming meaningful attachments to people" and this [c]ourt concludes that [Child]'s wellbeing will not be detrimentally affected by termination of the parental rights of Mother and Father. The evidence and testimony from the TPR hearing indicated that [F]oster [M]other is able to provide for [Child]'s needs, and termination of parental rights would best serve [Child]'s developmental, physical and emotional needs and welfare.

Orphans' Court Opinion, 10/18/18, at 16-17.

The record supports the orphans' court's conclusion that Child's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). Although Father cared for Child appropriately and enjoyed his time with Child, Father failed to maintain a consistent presence in Child's life. *See* N.T., 8/10/18, at 38-39, 111-12. Foster Mother ensures all of Child's medical, educational, developmental and psychological needs are met, and attends Child's therapeutic services. *See id.* at 39-41.

Dr. Rosenblum testified that while Child likes Father, the relationship is not one that is necessary to maintain for Child because Father has not maintained the relationship. *See id.* at 118. As it relates to a bond, Dr. Rosenblum opined that Child is not capable of forming meaningful attachments to other people. *See id.* at 124. However, Dr. Rosenblum believed that Child is more strongly attached to Foster Mother than anyone else. *See id.* at 115.

Dr. Rosenblum noted that Child knows who Father is, but that Child responds best to the person who puts time in with him, develops routines that are repetitive and predictable, and can interact with his medical providers to promote progress with Child's developmental functioning. *See id.* Dr. Rosenblum opined that Foster Mother, "without a doubt," is the person who can best provide for Child, describing her as an exceptionally patient, gentle, and nurturing individual. *See id.* at 115-16. Dr. Rosenblum also observed that Foster Mother puts Child's needs first, and goes to great lengths to promote a better and healthier outcome for Child. *See id.* at 119.

Dr. Rosenblum testified that either a subsidized permanent legal custodianship ("SPLC")[5] or adoption would be appropriate for Child.[6] *See id.*

_____

[5] This Court has explained SPLC as follows:

> In 2001, Pennsylvania created a subsidy program, SPLC, which provides financial support for families willing to become permanent legal custodians pursuant to [42 Pa.C.S.A. § 6351(f.1)(3)]. SPLC transfers permanent legal custody to the depend[e]nt child's legal custodian without requiring the termination of natural parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the depend[e]nt child's natural parents. To be eligible for SPLC, the legal custodian must meet all of the requirements for foster parenthood, submit to an annual eligibility evaluation, and have the ability to provide for the child without court supervision.

*In re B.S.*, 861 A.2d 974, 977 (Pa. Super. 2004).

[6] Dr. Rosenblum acknowledged the report he issued in March of 2018 stated that he did not "believe that a goal of adoption is consistent with [Child]'s needs and welfare," and that SPLC "is more appropriate." *See* N.T., 8/10/18,

at 120-21. Dr. Rosenblum did not believe the relationship with Father was a necessary and beneficial one. **See id.** at 118. Similarly, Ms. Fink testified that termination of Father's parental rights would serve Child's needs and welfare. **See id.** at 41.

Based upon our review of the record, we discern no error of law or abuse of discretion in the orphans' court's conclusion that terminating Father's parental rights best serves Child's needs and welfare pursuant to Section 2511(b). Accordingly, we conclude that the orphans' court did not err by involuntarily terminating Father's parental rights. Therefore, we affirm the court's August 14, 2018 order.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2019

---

at 139-42. Dr. Rosenblum explained that his opinion changed due to Father's limited visitation since his last report. **See id.** at 142.