J-A22031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JENNA MOORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN VIDOVICH | : | No. 217 WDA 2022 |

Appeal from the Order Entered January 28, 2022
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10452-2021

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                      **FILED: OCTOBER 28, 2022**

Appellant, Jenna Moore ("Mother"), appeals from the January 28, 2022 Custody Order entered by the Court of Common Pleas of Beaver County ("trial court"), modifying the trial court's April 30, 2021 interim custody order, and thereby providing John Vidovich ("Father") with an additional two overnights of custody.[1]  We affirm.

Mother and Father are the parents of two boys, aged two and four. Father filed a Petition for Custody in March 2021, seeking shared legal and physical custody of the children.  Following a custody conference, the trial

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Because neither party has applied to this Court for the use of the parties' initials, we refer to the parties' full names given in the trial court's caption. *See* Pa.R.A.P. 904(b)(2); Pa.R.A.P. 907.

court entered its recommended order, awarding the parties shared legal custody and awarding Mother primary physical custody, subject to Father's periods of partial physical custody.[2] On May 20, 2021, Father filed exceptions to the recommended order, seeking shared physical custody. Mother did not file exceptions. A trial was held on August 19, 2021, November 5, 2021, and January 28, 2022. Following trial, the trial court stated its findings and conclusions on the record, and these were incorporated into the written Custody Order entered on January 28, 2022. The Custody Order continued the parties' shared legal custody, maintained Mother as the primary physical custodian, and awarded Father an additional two overnights of custody. *See* N.T., 1/28/22, at 126-148; 1/28/22 Order. This appeal followed.[3]

Mother raises the following issues for our review:

1.      The trial court abused its discretion and erred as a matter of law when it narrowly applied the sixteen (16) factors under [23] Pa.C.S.[] § 5328(a)(1-16), [f]actors to consider when awarding custody, by awarding Father an additional two (2) days of custodial time with the minor children in question[.]

---

[2] Section 5322 of the Child Custody Act defines primary physical custody as "[t]he right to assume physical custody of the child for the majority of the time" and defines partial physical custody as "[t]he right to assume physical custody of the child for less than a majority of the time." 23 Pa.C.S. § 5322(a).

Under the recommended order, Father was four overnights short of a shared physical custody schedule.

[3] On February 22, 2022, Mother filed a concise statement of matters complained of on appeal with her notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court subsequently filed its Rule 1925(a) opinion on February 25, 2022.

2. The trial court abused its discretion and erred as a matter of law when it did not consider § 5328(a)(7) (well-reasoned preference of the child, based on the child's maturity and judgment) and did not believe that the eldest of the two (2) children could provide a logical account of his time with Father.

Appellant's Brief at 12.

When reviewing a custody decision by the trial court, our scope of review is of the broadest type and our standard of review is an abuse of discretion. *See D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014).

We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable finding of the trial court.

*Id*. (citation omitted).

We have stated:

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. V. S.T*., 87 A.3d 818, 829 (Pa. Super. 2014) (citations omitted). In addition to our deference to the trial court's credibility and weight determinations, we are mindful that "it is within the trial court's purview as finder of fact to determine which factors are most salient and critical in each

particular case." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (citations omitted). Most important, in any custody action under the Act, the paramount concern is the best interest of the child. ***See*** 23 Pa.C.S. §§ 5328, 5338.

Here, the trial court set forth on the record, at the conclusion of the third day of trial, a complete analysis of the sixteen custody factors set forth in 23 Pa.C.S. §5328(a), making findings and discussing the evidence as to each of these findings. Section 5328(a) provides:

> (a)  Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
>   (1)  Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
>   (2)  The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate safeguards and supervision of the child.
>
>   (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
>   (3)  The parental duties performed by each party on behalf of the child.
>
>   (4)  The need for stability and continuity in the child's education, family life and community life.
>
>   (5)  The availability of extended family.
>
>   (6)  The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

The trial court noted that Mother and Father had clearly exhibited their strong dislike for one another, not only by the evidence presented before the court but also in numerous supplemental filings, including contempt petitions

and emergency petitions for relief, and that "the level of conflict…is very high, and their willingness to cooperate with one another is virtually nonexistent." N.T., 1/28/22, at 128, 138. The court concluded, with regard to eight of the custody factors, that neither favored one or the other party. Two factors favored Mother, four factors favored Mother slightly, and one factor favored Father slightly. See N.T., 1/28/22, at 128-140. With regard to the sixteenth factor, i.e., any other relevant factor, the trial court credited Father's testimony attesting to Mother's good parenting ability and contrasted Father's comments with those of Mother, who criticized Father's parenting abilities throughout the trial. *Id*. at 140.

Mother asserts generally that the trial court erred by "narrowly applying" the 23 Pa.C.S. § 5328(a) custody factors; however, she provides no further elaboration whatsoever as to how or in what respect this narrow application occurred. Instead, she argues that the trial court failed to give appropriate and requisite weight to the second factor (present and past abuse), overlooking the past and present abuse allegedly committed by Father. Mother's Brief at 27. Mother maintains that she wants the children to have a relationship with Father, but that at present it is not healthy and safe, and she expresses her belief that Father should have a mental health evaluation. *Id*.

Section 5323(d) provides that a trial court shall delineate the reasons for its decision on the record or in a written opinion or order. 23 Pa.C.S. 5323(d). Here, the court discussed the evidence presented by the parties and

determined that the second factor favored Mother, setting forth its reasons as follows:

> In this case there has been extensive testimony with regard to alleged abuse by [Father] against [Mother].[4] [Father] has denied that in connection with this matter; however, there were a number of witnesses in connection with this case, and the [c]ourt would like to particularly point to the testimony of [Mother's neighbor] and his wife in connection with an incident involving a fence and the events that occurred in connection with this matter. [The neighbor,] testified that he [had] seen [Mother] with the children. He was helping [Mother] put up a fence, and when [Father] came to the residence in connection with this case, [] the children began screaming, and he saw [Father] pick up the children on his shoulder and throw them into the truck. He was rough with the children and drove off. This was confirmed by [the neighbor's wife]. ***It's not a major event in connection with abuse, but it is some indication of the temper of [Father].***

N.T., 1/28/22, at 130 (emphasis added).

The trial court also noted Mother's testimony regarding Father, in which she alleged he had been physically abusive with her on a number of occasions.[5] The trial court, however, found that this testimony was

---

[4] In addition to her own testimony, Mother offered the testimony of her mother, with whom she resides, as well as that of four friends or acquaintances, and a married couple who are her neighbors. Mother's mother related the details of various altercations she had observed between Mother and Father. Three of the friends offered testimony regarding Mother's excellent relationship with her children, but did not testify regarding Father; the fourth friend related a single instance involving a custody exchange that she observed between Mother and Father in which, she testified, Father was "emotional, angry, and vulgar at times." ***See*** N.T., 8/19/21, at 148.

[5] Mother filed a petition under the Protection From Abuse Act ("PFA") in August 2020. A temporary PFA order was issued on August 24, 2020; however, hearings on the PFA petition scheduled originally for September 2020 were

"somewhat offset" by the testimony of Father's former partner and mother of two of his three other children, stating that she had presented a completely opposite description of Father's character. *Id*. at 130.[6] Father's former partner, who is a daycare provider, testified at length regarding her co-parenting relationship with Father and the close relationship he has maintained with their two sons, now aged 14 and 20. *See* N.T., 11/5/21, at 91-168. She provided a detailed account of time she has spent observing Father while he has custody of the young children, and her belief that Father provides excellent and loving care to them. *Id*. In its Custody Order, the trial court included special conditions and instructions that, *inter alia*, require that the parties and their children participate in family counseling, and require Father to file, within three months of the order, a certificate of completion of a "Positive Transition Seminar," which had been previously ordered by the

_____

repeatedly rescheduled, and in March 2021, Mother withdrew her petition and the temporary order was dismissed. At trial, Mother testified that she had been staying periodically with Father and/or leaving the children alone with him in the three months immediately prior to her withdrawal of the petition. N.T., 11/5/21, at 85-88.

[6] The trial court also found that witness' testimony relevant in contrast with Mother's criticism of Father's parenting abilities, noting that Father's former partner portrayed Father "as a good father, not only with the children involved in [this] case," but with the children he had fathered with her. *See* N.T., 1/28/22, at 140.

court for both parties.[7]   **See** Custody Order, Special Conditions and Instructions.

After careful review, we can discern no abuse of discretion in the trial court's findings and reasoning.  The court found that the second factor favored Mother, but clearly did not view the evidence of abuse as such that could present a threat to the children's welfare or interfere with its determination that Father should continue to have partial custody of children.  We emphasize that the amount of weight that a trial court gives to any one factor is almost entirely within its discretion.  **See M.J.M.**, 63 A.3d at 339.

In her other issue, citing the seventh factor, i.e., the well-reasoned preference of the child, Mother also asserts that the trial court erred in failing to take the testimony of the parties' four-year-old child.  Mother's Brief at 28.  Before we reach the merits of this claim, we must determine whether Mother preserved the issue for our review.  Father argues that this issue was waived since neither party called the older, four-year-old child to testify, nor did either party object when the trial court did not call the child to testify on its own.  We agree.  Our review of the record reveals that neither party raised any issue pertaining to the older child's testimony before the trial court, and therefore we may not address Mother's claim of trial court error on appeal.  **See**

_____

[7] The record exhibits include certificates of completion for two on-line courses by Father in September 2021: a 16-hour "Parent Education and Family Stabilization" course and a four-hour "Parenting Skills" class; however, neither of these was the class ordered to be taken as part of the court's interim custody recommendation.  **See** Exhibits.

Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Trigg v. Children's Hospital of Pittsburgh of UPMC*, 229 A.3d 260, 269 (Pa. 2020) ("[I]t is axiomatic that issues not raised in lower courts are waived for purposes of appellate review, and they cannot be raised for the first time on appeal.").

Further, even if this issue were not waived, we would find no error or abuse of discretion in the court's determination not to interview the four-year-old child in this matter.  Pa.R.C.P. 1915.11 provides, in pertinent part:

(b)   The court *may* interview a child, whether or not the child is the subject of the action, in open court or in chambers. […]

(c)   Unless otherwise directed by the court, the child who is the subject of the action shall *not be required* to attend a hearing before the court or a conference.

Note: A party may bring a child to a conference or hearing but, in the absence of an order of court, is not required to do so.

Pa.R.C.P. 1915.11 (b)-(c) (emphasis added).   The trial court indicated that the seventh factor was not applicable in this case, as the children's young ages rendered them incapable of giving competent testimony.  N.T., 1/28/22, at 134.   In its on-the-record discussion of the sixth custody factor (sibling relationships), the trial court also mentioned competency to testify, referencing the two young boys' relationships with one another, as well as the very good relationships they maintain with Father's three older children, and stating "[b]ecause of the children's tender ages, I could not call them as witnesses.  According to the record, they are ages [two] and four and not

competent to testify, but they do have a relationship with one another." *Id*. at 133.

To support her argument that the court erred in its failure to call her son as a witness, Mother cites ***Bovard v. Baker***, 775 A.2d 835 (Pa. Super. 2001), a readily distinguishable case where this court concluded that the trial court abused its discretion by concluding that interviews with or testimony from four sisters, aged 10, 12, 14, and 16, regarding the parent with whom they would reside were unnecessary. In that case, in addition to the significantly older age of the children involved, both parties understood that the trial court was considering possible input from their four daughters, and the mother asserted that she had requested that they be interviewed. ***Id***. at 841. Here, no request was made for the four-year old child's testimony and Mother states only that "the testimony of the child could have provided insight to the court that was missing." Mother's Brief at 30. We discern no abuse of discretion in the trial court's failure to call the four-year old child. ***Compare E.C.S. v. M.C.S.***, 256 A.3d 449 (Pa. Super. 2021) (court abused its discretion when it rejected father's request to interview 6 and 7-year old children in modification and relocation custody action). ***See also K.L.C.S. v. D.W.S.***, No. 1254 EDA 2019, 2020 WL 7353815, at *7 (Pa. Super. 2020) (non-precedential decision) (court properly declined to interview child where mother did not submit offer of proof of what relevant testimony she expected to elicit from interview, or how testimony would be germane to matters before the court, nor did either parent ask for a child interview); ***E.H. v. Y.R.***, No.

347 WDA 2020, 2020 WL 6106650, at *5 (Pa. Super. 2020) (non precedential decision) (court did not err when it declined interview where neither party requested court interview children to better discern their preferences).[8]

Finally, Mother requests that if the case is remanded for the children's testimony, then a *guardian ad litem* ("GAL") should be appointed to represent their interests. Mother's Brief at 30. We reject this request as both untimely and moot, as we affirm the custody order. Neither party requested a GAL at any point in the proceedings before the trial court. We note that the appointment of a GAL in a custody matter is not mandatory. **See** Pa.R.C.P.1915.11 ("The court **may**, on its own motion or the motion of a party, appoint a [GAL] to represent the best interests of the child in a custody action.") (emphasis added). Further, we have stated:

> [A] [GAL] is not normally appointed in custody cases involving natural parents. A [GAL] is a person appointed by the court to represent a minor child's interest in particular litigation before the court. The appointment of a [GAL] is generally reserved for those actions where the trial court deems it necessary because the child's interest may be adversely effected, e.g., adoptions. However, in custody cases involving natural parents, despite the bitterness of each party toward each other, both parties are focused on the best interests of the child. Moreover, in a custody case, the trial court is obliged to ascertain the child's best interest. Since both parties and the trial court are focused on the child's best interests, it appears that the appointment of a [GAL] would not be proper absent extraordinary circumstances, and we note that bitterness between the parties ordinarily does not rise to the level of extraordinary circumstances needed for an appointment of a [GAL].

---

[8] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. **See** Pa.R.A.P. 126(b).

***C.W. v. K.A.W.***, 774 A.2d 745, 748 n.3 (Pa. Super. 2001).

After review, we find no abuse of discretion or error of law in the trial court's Custody Order.  Accordingly, we affirm the trial court's January 28, 2022 order.

Order affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/28/2022

- 13 -